**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**FORD MOTOR CREDIT COMPANY,**

          **Appellant (Plaintiff),**

**v.**                        **Case No. 3:04CV417/RV**

**TODD D. STALNAKER,**

          **Appellee (Defendant).**
_____/

**ORDER**

On July 21, 2003, the plaintiff, the Ford Motor Credit Company ("Ford"), filed a complaint in the Bankruptcy Unit of this Court, seeking to prevent the discharge of defendant Todd D. Stalnaker's debts under Chapter 7. The case went to trial and, on October 15, 2004, the Bankruptcy Judge, William S. Shulman, acting as a finder of law and fact, denied all of Ford's claims. Ford now appeals that decision on three grounds.

**I.    FACTUAL BACKGROUND**

The appellee, Dr. Todd D. Stalnaker ("Stalnaker"), is an obstetrician and gynecologist in the Pensacola, Florida area. Stalnaker's father, Dr. B.L. Stalnaker, is a retired doctor and was, from 1999, a financial partner in two car dealerships, one in Gulfport, Mississippi, and one in Ocean Springs, Mississippi. B.L. Stalnaker's partner in the dealerships was Warren Culbertson. Around the beginning of 2000, Stalnaker, his father, Culbertson, and Culbertson's brother-in-law, Mark Bonifay ("Bonifay"), all agreed to purchase a Mazda franchise in Pensacola, Florida. Pursuant

to this, the group formed Astro Imports of Florida, Inc. ("Astro Imports").

As a result of this process, Stalnaker signed several guarantees relating to Astro Imports.  Stalnaker signed as guarantor for a $775,000 loan and security agreement with Ford, as well as co-signing the guarantees of the floor plan, the line of credit for the business, and for the mortgage on the dealership property on Navy Boulevard ("Navy Boulevard property").  Stalnaker borrowed $200,000.00 from Whitney Bank for the business.  The funds were placed in Stalnaker's personal account at Whitney and then immediately paid to the dealership by cashier's check.  The loan was secured by a $200,000.00 certificate of deposit owned by Stalnaker.

In June of 2000, B.L. Stalnaker and Warren Culbertson ended their partnership in the Mississippi dealerships.  Culbertson took the Gulfport dealership and B.L. Stalnaker took the Ocean Springs dealership.  B.L. Stalnaker asked his son to replace Culbertson as a guarantor of the debt on the Ocean Springs property, and Stalnaker agreed.  Stalnaker acquired a 25% interest in Stalnaker & Stalnaker, LLC, the corporation that owned the Mississippi dealerships.  Soon thereafter, Culbertson ended his association with the Pensacola Mazda franchise, leaving the business owned by Stalnaker, B.L. Stalnaker, and Bonifay.  Bonifay-Stalnaker, LLC was created at this time.

Bonifay-Stalnaker, LLC purchased land and a building on Highway 29 in Pensacola, Florida, to be used as an additional location for the Mazda franchise.  Ford financed the purchase of this property, and Bonifay, B.L. Stalnaker, and Stalnaker each signed guarantees for the debt.

In November 2000, Bonifay approached B.L. Stalnaker about selling his interest on an emergency basis.  Bonifay stated that the sale was for personal reasons.  B.L. Stalnaker agreed to buy out Bonifay, and asked Stalnaker to help him finance the buy out.  Stalnaker borrowed $100,000.00 from Whitney Bank and signed additional loan guarantees to help his father obtain the money to buy out Bonifay's interest.  As a result, Bonifay-Stalnaker, LLC was converted to Stalnaker Family, LLC, with Stalnaker

and his father each owning a 50% interest in the business.  When B.L. Stalnaker took control of the business, he discovered that the business was in financial jeopardy.  The dealership was "out of trust" with Ford for the automobiles sold, and it had substantial trade debt. In June 2001, Stalnaker invested $100,000.00 in the dealership at his father's request.  To obtain the funds, Stalnaker cashed in the $200,000.00 certificate of deposit that he had previously pledged to Whitney Bank.  He used $100,000.00 to pay Whitney for the loan he had secured to buy out Bonifay, and $100,000.00 was deposited in the dealership account.

Stalnaker decided to disassociate himself from the automobile business in the spring and summer of 2001.  He entered into an agreement with B.L. Stalnaker according to which Stalnaker received the Navy Boulevard property in exchange for his interest in Stalnaker Family, LLC and Astro Imports.  Stalnaker signed over his stock certificates in the various interests in June of 2001, and transferred his 25% interest in Astro Imports of Florida by endorsing the stock certificates in blank. Stalnaker and the other entities involved did not seek Ford's permission to transfer the property to Stalnaker pursuant to the mortgage on the property.  Stalnaker had hoped to sell the Navy Boulevard property to recoup some of his losses, but Ford would not give its permission for Stalnaker to sell or lease the property, and eventually it foreclosed on the property.

In 2002, Stalnaker paid his father $6,000.00.  Stalnaker made one $3,000.00 payment on March 5, 2002, and another $3,000.00 payment on April 1, 2002.  These payments were made, according to the Stalnakers, in anticipation of surgical assistance that B.L. Stalnaker was to perform in April 2002, after the payments were made.

The dealership soon became unable to pay its creditors.  Stalnaker began to receive demands on guarantees from the Bank of Pensacola and Whitney Bank.  Ford filed suit against him.  Stalnaker sought legal help from William Bond, a Pensacola attorney who specializes in commercial transactions.  On June 18, 2002, Bond

successfully negotiated a settlement between Stalnaker and the Bank of Pensacola wherein Stalnaker paid approximately one-third of the total debt owed by Astro Imports ($75,000), in exchange for a release on the remaining debt from the Bank. The release did not apply to the other guarantors, Bonifay and B.L. Stalnaker.

At Bond's suggestion, Stalnaker also sought the advice of Thomas Reed ("Reed"), an experienced bankruptcy attorney in the Pensacola area.  Stalnaker met with Reed at his office approximately five times and talked to Reed on the telephone on numerous occasions.  At one of the initial visits, Stalnaker filled out an "input sheet" about his financial affairs to assist Reed in preparing the bankruptcy schedules. Based on this information, Reed prepared a Chapter 7 bankruptcy petition, which was submitted by Stalnaker on March 31, 2003.

In the petition, Reed failed to list the Bank of Pensacola settlement or the April 1, 2002, payment to B.L. Stalnaker.  The petition's list of assets did not include any mention of a right to contribution based on the Bank of Pensacola settlement, and did not list Stalnaker's interest in Stalnaker & Stalnaker, LLC, but instead listed an interest in Stalnaker Family, LLC, which he no longer had.  Stalnaker responded to question 3(a) of the statement of affairs, which requires a debtor to list all payments aggregating more than $600 made within 90 days of filing of the bankruptcy petition, with "usual monthly payments." Stalnaker and his wife paid their bills, including credit card bills, in full each month.

The Section 341 meeting of creditors was held on May 19, 2003.  At this meeting, Stalnaker testified that his interest in Stalnaker Family, LLC related to the Mississippi dealerships.  Subsequent to that meeting, on July 21, 2003, Ford filed a complaint objecting to the discharge of Stalnaker.  The complaint alleged four separate causes of action under Title 11, United States Code, Section 727[1].  Ford's Section 727(a)(3) and Section 727(a)(5) claims were based on Stalnaker's purported transfer of his interest in Stalnaker Family, LLC in June of 2001.  Ford's Section 727(a)(4)

---

[1] One of the counts, a Section 727(a)(7) claim, was voluntarily dismissed before trial.

claim cited seven examples of what it considered fraudulent statements or omissions relating to Stalnaker's bankruptcy petition: (1) the failure to include Stalnaker's interest in Stalnaker & Stalnaker, LLC in his list of assets; (2) the false inclusion of an interest in Stalnaker Family, LLC in the list of assets; (3) the failure to include the $75,000 settlement with the Bank of Pensacola as a payment made within one year of the filling of bankruptcy; (4) the failure to include Stalnaker's right of contribution arising from the Bank of Pensacola settlement in the list of assets; (5) the failure to include the April 1, 2002, payment made to Stalnaker by his father as a payment to an insider made within one year of the filing of bankruptcy; (6) the failure to provide an itemized list of creditors paid within 90 days of the filing of bankruptcy, and specifically the failure to include utility bill payments on such a list; and (7) the failure to list American Express as an unsecured creditor in the petition.

A trial was held on April 23, 2004, during which Stalnaker attempted to explain these oversights. Stalnaker testified that he had confused Stalnaker & Stalnaker, LLC with the similar sounding Stalnaker Family, LLC, leading him to provide inaccurate information in his filings. This was corroborated by the testimony of Reed, who testified he did not realize that there were two distinct LLC entities, despite the fact that he had reviewed documents relating to the sale of the Mississippi property by Stalnaker & Stalnaker, LLC. Similar explanations were offered for the other discrepancies. Reed testified that he did not include Stalnaker's obligations with respect to American Express or utilities because the standard practice in the Northern District of Florida is not to list entities with bills that are paid on a current basis as creditors, even if the bill is a recurring debt. Reed also testified that he knew of the Bank of Pensacola settlement and payment to B.L. Stalnaker, but believed they did not need to be listed in the bankruptcy petition. Finally, Stalnaker testified that he was not aware that he had a right of contribution from B.L. Stalnaker or Bonifay stemming from the Bank of Pensacola settlement.

Stalnaker also offered evidence supporting his account of the transfer of his

interest in Stalnaker Family, LLC. Stalnaker introduced into evidence the deed transferring the Navy Boulevard property from B.L. Stalnaker to Stalnaker, as well as the stock certificates of Astro Imports of Florida signed in blank by Stalnaker.  He also introduced a letter dated June 18, 2001, to B.L. Stalnaker from his attorney, stating "You have instructed me to prepare the necessary paperwork to transfer Todd's stock in Astro Imports of Florida, Inc. to you and to transfer the land on Navy Boulevard to Todd.  Additionally, you have requested that we prepare the paperwork to transfer Todd's interest in Stalnaker Family, LLC to you." This letter, marked 'Exhibit 29', was admitted despite the fact that it was not included in the pre-trial order.

At the close of evidence, Bankruptcy Judge Shulman dismissed Ford's Section 727(a)(5) claim and part of its Section 727(a)(3) claim.  After further consideration of these issues, the bankruptcy judge denied all of Ford's remaining claims in an order entered on October 15, 2004.  Ford now appeals the decision, raising three issues for review.

## II.    DISCUSSION

### A.    Standard of Review

A district court must accept a bankruptcy judge's findings of fact unless they are clearly erroneous.  In re Bush, 62 F.3d 1319, 1322 (11th Cir. 1995).  The court reviews the bankruptcy judge's conclusions of law de novo.  Id.  When determining whether the bankruptcy judge's factual findings are clearly erroneous, a reviewing court must ask whether "on the entire evidence" it is "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948).

### B.    Issue One

Ford's first issue on appeal is whether the bankruptcy judge committed reversible error by admitting Exhibit 29 into evidence, despite the fact that it was not included in the pre-trial order.  The decision to admit or exclude evidence not disclosed in connection with the pretrial order is discretionary.  Bearint ex rel. Bearnint v. Dorell

Juvenile Group, 389 F.3d 1339 (11th Cir. 2004).   Such evidentiary rulings are reviewed for abuse of discretion, and will only be reversed they involve a clear error of judgment or an incorrect legal standard that has resulted in "substantial prejudice." Piamba Cortes v. American Airlines, 177 F.3d 1272, 1305-06 (11th Cir. 1999).  This standard of deference is even greater when the objected-to evidentiary ruling is made during a bench trial.  Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213 (11th Cir. 2003).

The bankruptcy judge did not abuse his discretion by admitting Exhibit 29. While the document was not listed in the pre-trial order, this does not appear to be due to any deception on the part of Stalnaker.  Rather, the document was not listed in the pre-trial order because it was not discovered until the day before trial.  As soon as it was discovered, Stalnaker informed Ford of its existence.  The letter merely served to confirm Stalnaker's version of events.  Ford cannot claim any undue surprise from the document.  It's admittance was proper.  See Robert v. Conti Carriers & Terminals, 692 F.2d 22 (5th Cir. 1982) (holding that where trial testimony was consistent with previous letter to opposing attorney outlining proposed testimony, allowing the testimony was not an abuse of discretion, despite the fact that it was not included in the pre-trial order).

However, even if it was error to admit Exhibit 29, Ford has not shown that it was substantially prejudiced by its admittance.  Rule 61 of the Federal Rules of Civil Procedure, made applicable to this action by Rule 9005 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." The burden of establishing that a substantial right has been affected is on the appellant.  Howard v. V.A. Gonzales, 658 F.2d 352 (5th Cir. 1981). Ford has not met this burden.

Ford contends that the bankruptcy judge's decision to admit Exhibit 29 substantially prejudiced it in all three of its counts.  Ford's explanation of how it was

Page 8 of  12

prejudiced, however, is quite vague.  Exhibit 29 was relevant to Ford's Section 727(a)(3) and 727(a)(5) claims.  However, in both cases the exhibit only served to corroborate other testimony and evidence given at trial, and was not necessary for Stalnaker's defense.  And, in the case of Ford's Section 727(a)(4) claim, the exhibit is at best only tangentially relevant to the claim.

Ford's Section 727(a)(3) claim was premised on the contention that Stalnaker had failed to keep adequate records relating to the exchange of his interest in Stalnaker Family, LLC for the Navy Boulevard property.  To prevent discharge under Section 727(a)(3), the objecting party must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions.  Meridian Bank v. Alten, 958 F.2d 1226 (3rd Cir. 1992).  In addition to Exhibit 29, Stalnaker produced several documents relating to this transfer, including the deed transferring the Navy Boulevard property from Astro Imports to Stalnaker, stock certificates signed in blank by Stalnaker on June 18, 2001, and Stalnaker's 2002 tax returns, which do not list holdings in Stalnaker Family, LLC.  Though not extensive, even without Exhibit 29 these documents do provide a basic outline of the transfer from which a creditor could ascertain Stalnaker's financial condition.  While a debtor is required to keep adequate records, he need not keep exact or meticulous records.  Matter of Juzwiak, 89 F.3d 424, 428 (7th Cir. 1996) ("Records need not be kept in any special manner, nor is there any rigid standard of perfection in record-keeping mandated by 727(a)(3).").  Given the other evidence available on the matter, any error resulting from the admission of Exhibit 29 was harmless.  Brough v. Imperial Sterling, 297 F.3d 1172 (11th Cir. 2002).

A similar analysis applies to Ford's claim under Section 727(a)(5).  Under Title 11, United States Code, Section 727(a)(5), a court may decline to grant discharge if the debtor has failed to satisfactorily explain any deficiency of assets to meet the debtor's liabilities.  Unlike Section 727(a)(3), which requires adequate record keeping,

Section 727(a)(5) only requires the debtor to give an explanation for the disposition of his interest in Stalnaker Family, LLC. Stalnaker did this at trial, and while the more contemporaneous Exhibit 29 may have corroborated Stalnaker's trial testimony, it was ultimately cumulative, and thus any error in admitting the document did not prejudice Ford's Section 727(a)(5) claim.  Brough, supra, 297 F.3d at 1179.

With regard to Ford's Section 727(a)(4) claim, it is not clear that Exhibit 29 is even relevant.  To prevent discharge under Section 727(a)(4), the objecting party must show that the creditor made a false oath materially related to a bankruptcy proceeding, and that this was done knowingly and fraudulently.  Swicegood v. Ginn, 924 F.2d 230 (11th Cir. 1991).  A deliberate omission from bankruptcy schedules or the statement of financial affairs may be considered a false oath under Section 727(a)(4).  In re Chalik, 748 F.2d 616 (11th Cir. 1984).  A debtor's reckless indifference to the truth is the functional equivalent of fraud, as required to support denial of discharge under Section 727(a)(4).  In re Grondin, 232 B.R. 274 (1st Cir. 1999).

At trial, Stalnaker admitted that he had erroneously listed on his bankruptcy application an interest in Stalnaker Family, LLC, which he did not have and had failed to list a corresponding interest in Stalnaker & Stalnaker, LLC, which he did have. However, Stalnaker denied that he had made these errors knowingly and fraudulently. Instead, Stalnaker claimed to have been confused by the similar sounding names of the two corporations.  He was not the only one.  Stalnaker's attorney, Thomas Reed, also testified that he had mixed up the two entities, despite the fact that he had reviewed document relating to the sale of the Mississippi property in preparation for Stalnaker's proceedings.  Even the attorney for Ford admitted at trial that he had not been previously aware there were two entities.  Stalnaker's explanation at trial squares with his earlier testimony at the first meeting of his creditors, where he testified that his 25% interest in Stalnaker Family, LLC was related to the Mississippi property.  In the face of this evidence, the bankruptcy judge concluded that Stalnaker was not knowingly attempting to mislead creditors when he listed his interest in the Mississippi

property as an interest in Stalnaker Family, LLC, rather than Stalnaker & Stalnaker, LLC.

Exhibit 29 neither adds to nor detracts from this conclusion.  Exhibit 29 does not show that Stalnaker had mixed up Stalnaker Family, LLC and Stalnaker & Stalnaker, LLC.  All it shows is that Stalnaker had transferred his interest in Stalnaker Family, LLC in 2001, a fact Ford does not dispute.  Thus, Ford cannot show that the admittance of Exhibit 29 substantially prejudiced its Section 727(a)(4) claim against Stalnaker.

Robert v. Conti Carriers & Terminals, 692 F.2d 22 (5th Cir. 1982).

C.    Issue Two

In its second issue on appeal, Ford mounts a more general challenge to Bankruptcy Judge Shulman's denial of its Section 727(a)(4) claim.  According to Ford, the bankruptcy judge's ruling was deficient because (1) the court improperly shifted the burden of proof to Ford, and (2) the court viewed each allegedly false oath individually, rather than using a "totality of the circumstances" test.  In his order, the bankruptcy judge set the of five elements which Ford had to prove to establish a prima facie case under Section 727(a)(4): (1) that the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew the statement was false; (4) that the statement was made with the intent to deceive; and (5) that the statement related materially to the bankruptcy case.  Order, at 11 (citing In re Matus, 303 B.R. 660 (Bank. N.D. Ga. 2004).  After examining the evidence in the case, Bankruptcy Judge Shulman concluded that Ford had failed to establish even a prima facie case for any of the statements or omissions in question.

The legal standard set out by the bankruptcy judge was the correct one.  Rule 4005 of the Federal Rules of Bankruptcy Procedure provides that "[a]t trial on a complaint objecting to discharge, the plaintiff has the burden of proving the objection."  Once the plaintiff has established a prima facie case under Section 727(a)(4), the debtor bears the burden of providing a satisfactory explanation for the statements in

question.  Chalik, supra, 748 F.2d at 619.  However, ultimately the burden of proof remains with the objecting party.  Farouki v. Emirates Bank International, 14 F.3d 244 (4th Cir. 1994).  In this case, the bankruptcy judge found that Ford had not met its initial burden, and so did not shift the burden to Stalnaker to provide an explanation.  This determination was factual in nature, and is thus reviewed under a clearly erroneous standard.  Bush, supra, 62 F.3d at 322.  Saying that the court "shifted" the burden to Ford from Stalnaker overlooks the fact that it was Ford, not Stalnaker, who had the initial burden of proof.  Chalik, supra, 748 F.2d at 619.

As for Ford's contention that the bankruptcy judge improperly viewed each allegedly false oath in isolation, rather than viewing them in the totality of the circumstances, this argument is without merit.  Ford cited seven instances of what it considered fraudulent statements or omissions in Stalnaker's bankruptcy petition.  Of the seven, Bankruptcy Judge Shulman determined that two were based on the confusion between Stalnaker Family, LLC and Stalnaker & Stalnaker, LLC (discussed above); three (the April 1, 2002 payment to B.L. Stalnaker, the failure to itemize monthly utility payments, and the failure to include American Express as a creditor) were made in good faith reliance on the advice of Stalnaker's attorney; and one (the failure to list Stalnaker's right of contribution from the Bank of Pensacola settlement) was not even false.  The one remaining omission (Stalnaker's settlement with the Bank of Pensacola) was in error, but as the bankruptcy judge pointed out, it was far from clear where the settlement should have been listed on Stalnaker's schedules, and Ford had produced no evidence indicating that this omission was made either with the intent to deceive or with a reckless disregard for the truth.  Taken as a whole, these incidents have the feel less of a pattern and practice of deception, than of a few unintentional errors made in what is an admittedly complex undertaking.

Because the determination of intent depends largely upon an assessment of the debtor's credibility, respect for a bankruptcy judge's factual findings is particularly appropriate in this context.  In re Miller, 39 F.3d 301 (11th Cir. 1994).  Even when the

totality of the circumstances might plausibly support an interference of fraud, a bankruptcy judge's contrary finding must be credited unless the evidence is so one-sided as to compel the inference of fraud.  In re Carp, 340 F.3d 15 (1st Cir. 2003).

      D.    Issue Three

In its final issue on appeal, Ford contends that the bankruptcy judge improperly held Stalnaker to a lower duty of disclosure than the typical Chapter 7 debtor.  While Ford's brief is far from clear on the point, this objection also seems to pertain to Ford's Section 727(a)(4) claim, and particularly with Stalnaker's failure to include his settlement with the Bank of Pensacola as a payment made within one year of the filling of bankruptcy.  In the portion of the bankruptcy judge's decision dealing with the Bank of Pensacola settlement, the court, after acknowledging that the settlement should have been listed in the schedules, stated that "Ford's complaint and subsequent pleadings do not specify which question or questions under which the Bank of Pensacola settlement should have been listed." Order, at 14.  Ford contends that the bankruptcy judge required it to provide Stalnaker with guidance on how to fill out his bankruptcy schedules.  However, Bankruptcy Judge Shulman was clear that he was not imposing a duty on Ford to assist Stalnaker in preparing his bankruptcy schedules. Rather, the issue in question was "whether the failure to list the settlement payment of $75,000 to the Bank of Pensacola was made 'knowingly and fraudulently.'" Order, at 15.  After examining the evidence, the bankruptcy judge found as a matter of fact that the omission had not been made knowingly and fraudulently, and nothing in Ford's brief shows that this finding was clearly erroneous.

**III.  CONCLUSION**

For the foregoing reasons, the decision appealed from is AFFIRMED.

DONE and ORDERED this 10th day of May, 2005.

                    /s/  *Roger Vinson*
                    **ROGER VINSON**
                    **Senior U.S. District Judge**